IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:08CR50 |
| | ) | |
| v. | ) | |
| | ) | **SENTENCING MEMORANDUM** |
| THOMAS GELLATLY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court for sentencing. This memorandum opinion supplements findings made on the record at a sentencing hearing on December 10, 2008.

## I. FACTS

On February 14, 2008, defendant Thomas Gellatly was charged with possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), receipt or distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2), and civil forfeiture of computer equipment and files under 18 U.S.C. § 2253. Filing No. 10, Indictment. Pursuant to a plea agreement, Gellatly entered a plea of guilty to receipt of child pornography under 18 U.S.C. § 2252A and agreed to forfeit the property. Filing No. 29, Plea Agreement. Section 2252A makes it a crime to knowingly receive or distribute any child pornography that has been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer. 18 U.S.C. § 2252A(a)(2). Under the statute, the mandatory minimum sentence is five years and the maximum is twenty years. 18 U.S.C. § 2252A(b)(1).[1]

---

[1] In contrast, the crime of possession of child pornography "that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce . . . by any means including by computer" carries a maximum sentence of ten years for a first offender, with no minimum sentence. 18 U.S.C. § 2252 (b)(1).

In the plea agreement, the government agreed to dismiss the possession count at sentencing and to recommend a sentence at the low end of the Guidelines range.  Filing No. 29, Plea Agreement at 1-2.   The court accepted Gellatly's plea of guilty but deferred acceptance of the plea agreement pending the preparation of a Presentence Investigation Report (hereinafter, "PSR") by the United States Office of Probation (hereinafter, "the Probation Office") that calculated the defendant's sentence under the United States Sentencing Guidelines ("the Guidelines").

The Probation Office based its outline of the offense conduct on the prosecutor's version of events and on an interview with the case agent.  Filing No. 45, PSR at 4-5.  As a result of an investigation involving German groups disseminating child pornography, Immigration and Customs Enforcement ("ICE") officers obtained the defendant's Internet subscriber information and identified him as a member of two groups receiving child pornography from the German groups.  *Id.* at 4.  Gellatly admitted downloading and viewing the child pornography.  *Id.*  ICE agents seized Gellatly's computer and found six videos and up to 1,637 images of child pornography, including images of prepubescent boys.  *Id.* at 5.  The case agent reported that "at least one of the images depicted a prepubescent minor being digitally penetrated by an adult male."  *Id.* at 5.

The Probation Office determined that U.S.S.G. § 2G2.2 provided a base offense level of 22 for the defendant's violation.  It found Gellatly accountable for a total of 2,087 images of child pornography, including six videos, calculated under the Guidelines as 75 images per video.  It found a two-level reduction under U.S.S.G. § 2G2.2(b)(1) was warranted because the defendant's conduct was limited to the receipt or solicitation of material involving the sexual exploitation of a minor, and the defendant did not intend to

traffic in or distribute such material.  It also found the following upward adjustments were applicable:  a two-level increase under U.S.S.G. § 2G2.2(b)(2) (for possession of material containing a prepubescent minor), a four-level increase under U.S.S.G. § 2G2.2(b)(4) (for material that portrays sadistic or masochistic conduct or other images of violence),[2] a two-level increase under U.S.S.G. § 2G2.2(b)(6) (for use of a computer), and a five-level increase under U.S.S.G. § 2G2.2(b)(7) (for possession of more than 600 images).  The application of these enhancements resulted in an adjusted offense level of 33.  The Probation Office then subtracted three levels for the defendant's acceptance of responsibility under U.S.S.G. § 3E1.1, resulting in a total offense level of 30.  Gellatly has no criminal record and his criminal history category is I.  At base offense level 30 and criminal history category I, Gellatly's Guidelines range of imprisonment is 97 to 121 months.  The Probation Office also stated that because the defendant had been a teacher and a trusted person in the community, an outside the Guidelines sentence would be warranted, noting it was "especially alarming because the defendant worked with children on a daily basis." *Id.* at 13.  The government adopted the findings in the PSR.  Filing No. 35.

Gellatly objected to the enhancements for sadistic images, for number of images, and to any consideration of his employment as a teacher to enhance his sentence outside the Guideline range, noting that he had not harmed or abused any children.  Filing No. 36.  He also moved for a downward departure or deviation.  Filing No. 37.  He argued for a departure for psychological and physical impairment under U.S.S.G. § 5H1.4 and because

---

[2]The probation officer noted that "[o]ne image involved adult penetration of a prepubescent boy. Based on 8th Circuit case law, this conduct qualifies as sadistic conduct." *Id.* at 6.

3

of his susceptibility to abuse in prison, his age of sixty-two, and his inability to obtain gainful employment after release from prison under U.S.S.G. § 5K2.0.  He argued for a deviation from Guidelines range under 18 U.S.C. § 3553(a) by reason of pre- and post-indictment psychological and psychiatric treatment, and argued that an outside-Guidelines sentence would provide him with medical care or other correctional treatment in the most effective manner.  He further argued that he would have been eligible for application of the "safety valve" in an  analogous drug prosecution.

Evidence presented to the court shows that Gellatly has received psychological assessment, treatment, and counseling.  He has been diagnosed with adjustment disorder with mixed anxiety and depressed mood, bipolar disorder, depression, and generalized anxiety disorder.  Filing No. 45, PSR at 9.  His medical records show that he has a history of lung cancer and half of his left lung was removed seven years ago.  *Id.* at 28.  Psychiatric evaluations have concluded that he is not a pedophile, is at minimum risk to act out any sexual fantasies, and is not a direct danger to society.  *Id.* at 25-26.

## II.  LAW

The Sentencing Guidelines are no longer mandatory.  *United States v. Booker,* 543 U.S. 220, 260-61 (2005).  In *Booker,* the Supreme Court held that the mandatory Sentencing Guidelines system violated the Sixth Amendment.  *Booker,* 543 U.S. at 226-27.  In the *Booker* remedial opinion, the Supreme Court determined that the constitutional violation would be cured by modifying the federal sentencing statute to make the Guidelines effectively advisory.  *Id.* at 245.  Consequently, the range of choice in sentencing dictated by the facts of the case has been significantly broadened.  *Gall v. United States,* 552 U.S. —, —, 128 S. Ct. 586, 602 (2007) (finding a sentence outside the

Guidelines to be reasonable); *Kimbrough v. United States,* 552 U.S. —, —, 128 S. Ct. 558, 570 (2007) (noting that courts may vary from Guidelines ranges based solely on policy considerations, including a disagreement with the Guidelines); *Rita v. United States,* 551 U.S. —, —, 127 S. Ct. 2456, 2465 (2007) (holding that a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations"); *Cunningham v. California,* 549 U.S. 270, —, 127 S. Ct. 856, 867 (2007) (stating that judges are no longer tied to the sentencing range indicated in the Guidelines but are obliged to "take account of" that range along with the sentencing goals Congress enumerated in 18 U.S.C. § 3553(a) of the Sentencing Reform Act).  District courts must therefore "give respectful consideration to the Guidelines," but are permitted "'to tailor the sentence in light of other statutory concerns as well.'"  *Kimbrough*, 552 U.S. at —, 128 S. Ct. at 570 (*quoting Booker,* 543 U.S. at 245-246); *Gall,* — U.S. at —, 128 S. Ct. at 596 (stating "[t]he Guidelines are not the only consideration, the district judge should consider all of the § 3553(a) factors").  These cases "mean that the district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines."  *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 577 (Scalia, J., concurring).

The Sentencing Reform Act "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing, including 'to reflect the seriousness of the offense,' 'to promote respect for the law,' 'to provide just punishment for the offense,' 'to afford adequate deterrence to criminal conduct,' and 'to protect the public from further crimes of the defendant.'"  *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 570 (*quoting* 18 U.S.C. § 3553(a)).

The statute further provides that "in determining the appropriate sentence, the court should consider a number of factors, including 'the nature and circumstances of the offense,' 'the history and characteristics of the defendant,' 'the sentencing range established' by the Guidelines, 'any pertinent policy statement' issued by the Sentencing Commission pursuant to its statutory authority, and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id. (quoting* 18 U.S.C. § 3553(a)). A sentencing judge has greater familiarity with an individual case and individual defendant than the Commission or the appeals court and is "therefore 'in a superior position to find facts and judge their import under § 3353(a)' in each particular case." *Id*., 552 U.S. at —, 128 S. Ct. at 574 (*quoting Gall,* 552 U.S. at —, 128 S. Ct. at 597).

Although the Guidelines remain "the starting point and the initial benchmark" in determining a sentence, the district court "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented." *Gall,* 552 U.S. at —, 128 S. Ct. at 596-97. "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.,* 552 U.S. at —, 128 S. Ct. at 596. If the court decides that an outside-Guidelines sentence is warranted, the court must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. *Id.* The Supreme Court rejects, however, the notion that "'extraordinary' circumstances [are required] to justify a sentence outside the Guidelines range" and rejects "the use of a rigid mathematical formula that uses the percentage of a departure as the

6

standard for determining the strength of the justifications required for a specific sentence." *Id.* at 595.

Congress established the Sentencing Commission ("the Commission") "to formulate and constantly refine national sentencing standards," in fulfillment of its important institutional role. *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 570; *Rita v. United States,* 551 U.S. at —, 127 S. Ct. at 2464. When operating within that institutional role, the Sentencing Commission "has the capacity courts lack" and can "'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574 (*quoting United States v. Pruitt,* 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)). In formulating the Guidelines, the Commission developed and used data on past practices and recidivism. *See* United States Sentencing Commission, Fifteen Years of Guidelines Sentencing (Nov. 2004) ("Fifteen-Year Assessment") at 14; U.S.S.G. § 1A.1, intro. comment., pt. A, ¶ 3; *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567. *Gall,* 552 U.S. at —, 128 S. Ct. at 594 (noting that the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions"). Based on these sentencing statistics, the Commission established the offense levels for each crime, linked to a recommended imprisonment range. Fifteen-Year Assessment at 14. Accordingly, in many cases the Guidelines represent a reasonable estimation of a fair sentencing range. *See Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574.

When Guidelines are not the result of "the Commission's exercise of its characteristic institutional role," such as when they are not based on an empirical approach, but are instead keyed to or guided by statutory directives, a court is not

presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *See, e.g., Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574 (*quoting Rita*, 551 U.S. at —, 127 S. Ct. at 2465); *see also Gall,* 552 U.S. at —, 128 S. Ct. at 594 n.2 (noting that not all Guidelines are tied to empirical evidence).  Consequently, the Guideline ranges of imprisonment for those crimes are a less reliable appraisal of a fair sentence. *See Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574-75.  In such cases, it is "not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that application of the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case." *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 575.

For policy reasons, and because of statutory mandatory minimum sentences, the Commission departed from past practices in setting offense levels for such crimes as fraud, drug trafficking, and child abuse crimes and sexual offenses.  Fifteen-Year Assessment at 15, 72-73; *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567.  The Guidelines for child exploitation offenses were not developed under the empirical approach, but were promulgated, for the most part, in response to statutory directives. *See*, *e.g.,* U.S.S.G. App. C, Vol. I, Amends. 537 & 538 (Nov. 1, 1996); Vol. II, amend. 592 (Nov. 1, 2000), 615 (Nov. 1, 2001), 649 (April 30, 2003); Supp. Vol., amend. 651 (Oct. 27, 2003), 664 (Nov. 1, 2004); United States Sentencing Commission, Report to Congress: Sex Offenses Against Children, Findings and Recommendations Regarding Federal Penalties (June 1996) ("Sex Offenses Against Children Report").  The Commission itself acknowledges that "[t]he frequent mandatory minimum legislation and specific directives to the Commission to

amend the Guidelines make it difficult to gauge the effectiveness of any particular policy change, or to disentangle the influences of the Commission from those of Congress." Fifteen-Year Assessment at 73; *see also* United States Sentencing Commission, Special Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System at 26 (Aug. 1991) (noting that "mandatory minimums are both structurally and functionally at odds with sentencing guidelines and the goals the guidelines seek to achieve").

The text and structure of the criminal statute under which the defendant was charged and convicted, 18 U.S.C. § 2252A, prohibits several categories of conduct with respect to child pornography: (1) mailing, transporting or shipping child pornography in or affecting interstate or foreign commerce by any means, including by computer; (2) knowingly receiving or distributing child pornography that has been mailed, shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; (3) knowingly reproducing, advertising, promoting, presenting or distributing in interstate commerce "material or purported material in a manner that reflects the belief, or that is intended to cause another to believe, that the material or purported material is, or contains—(i) an obscene visual depiction of a minor engaging in sexually explicit conduct; or (ii) a visual depiction of an actual minor engaging in sexually explicit conduct;" and (4) knowingly selling or possessing with intent to sell child pornography that has been mailed, shipped to transported in or affecting interstate or foreign commerce by any means, including by computer. 18 U.S.C. § 2252A(a)(1)-(4). Another statute also criminalizes simple possession. 18 U.S.C. § 2252(a)(1)(4)(B). That statute carries a maximum sentence of ten years for a first offender, with no mandatory minimum. *Id.* Subsection

(a)(5) of the statute criminalizes possession, which is punishable by a sentence of up to 10 years.  18 U.S.C. §§ 2252A(A)(5); 2252A(b)(2).

At the inception of the Guidelines, simple possession of child pornography was not a crime and the relevant Guideline provision, § 2G2.2, was limited to "transporting, receiving, or trafficking" offenses.  *See* U.S.S.G. § 2G2.2 (1987).  The crimes of possession and possession with intent to sell were added to the statute as part of the Crime Control Act of 1990.  *See* Pub. L. 101-647, § 323(b), 104 Stat. 4789, 4818-19 (1990); *United States v. Vig,* 167 F.3d 443, 449 (8th Cir. 1999) (noting the expansion of Congress's enforcement authority as a result of the criminalization of the mere possession of child pornography).[3]  Correspondingly, Congress directed the Sentencing Commission to "amend existing Guidelines for sentences involving sexual crimes against children . . . so that more substantial penalties may be imposed if the Commission determines current penalties are inadequate."  Pub. L. 101-647, 1990 S. 3266, Title III, § 323(a), (b), 104 Stat. 4789, 4819 (Nov. 29, 1990).  In response, the Commission proposed the creation of a

---

[3]Over the years, Congress has passed numerous laws of increasing severity that regulate child pornography and exploitation of children. *See, e.g.,* the Protection of Children Against Sexual Exploitation Act of 1977, *codified as amended* at 18 U.S.C. §§ 2251-2253 (targeting the commercial production of visual or print depictions involving minors engaged in sexually explicit conduct); the Child Protection Act of 1984, *codified as amended* at 18 U.S.C. § 2253 (raising the age of a child for purposes of defining child pornography from sixteen to eighteen); the Child Protection and Obscenity Enforcement Act of 1988, *codified as amended* at 18 U.S.C. §§ 2251 & 2252(a) (criminalizing the use of computers to transport, distribute, or receive visual depictions involving minors and prohibiting the knowing interstate transportation and receipt of visual depictions of sexually explicit conduct involving a minor); the Sex Crimes Against Children Act of 1995, *codified as amended* at 18 U.S.C. §§ 2251 & 2252; the Child Pornography Prevention Act of 1996, *codified as amended* at 18 U.S.C. § 2251 (extending the prohibition against child pornography to sexually explicit images that appear to depict minors but were produced without using any real children), *invalidated as unconstitutional* in *Ashcroft v. Free Speech Coal.,* 535 U.S. 234 (2002), & 2252A (punishing, among other activities, anyone who "knowingly possesses any . . . material that contains an image of child pornography that has been mailed . . . in interstate or foreign commerce by any means, including by computer"); the Protection of Children from Sexual Predators Act of 1998, *codified as amended* at 18 U.S.C. § 2426 (increasing punishment for persons who misrepresent themselves as minors or use computers or Internet access devices to locate and gain access to minors and for repeat offenders); the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), *codified as amended* at 18 U.S.C. § 2252B (making it a criminal offense to use "a misleading domain name on the Internet with the intent to deceive a person into viewing obscenity or material constituting obscenity").

separate guideline provision, § 2G2.4, with a base offense level of 10, to cover possessing, receiving, or transporting child pornography.  *See* Notice of Proposed Amendments to the Sentencing Guidelines, 56 Fed. Reg. 1846-01, 1863, 1991 WL 310646 (proposed Jan. 17, 1991).  Under the Sentencing Commission's proposal, trafficking would continue to be covered in § 2G2.2, with a base offense level of 13.  *Id.* at 1863-64.

Later, over the objection of the Sentencing Commission, Congress, reacting to the erroneous perception that the Sentencing Commission had lessened penalties for child pornography crimes, again directed the Commission to alter the Guidelines.  *See* 137 Cong. Rec. H6736-02, H6737 (1991).  In doing so, Congress rejected the Sentencing Commission's advice and abandoned the studied empirical approach to child pornography sentencing.  *See id.* at H6738 (Correspondence to Congressman Edward R. Roybal from Sentencing Commission Chairman William Wilkins).  Congress explicitly directed the Sentencing Commission to increase the base offense level for simple possession from 10 to 13, to include "receiving" pornography in the Guidelines section that governed trafficking and transporting, to increase the base offense level for receiving, transporting, and trafficking from 13 to 15 and to add enhancements for the number of items possessed and for a pattern of activity involving the sexual abuse or exploitation of a minor.  *Id.* at H6741. In 1995, Congress again directed the Commission to increase penalties for child pornography and other sex crimes against children.  *See* U.S.S.G. App. C., Vol. I, Amends. 537 & 538 (November 1996) (implementing the Sex Crimes Against Children Prevention Act of 1995, Pub. L. No. 104-71, H.R. 1240, 104th Cong., 109 Stat. 774 (1995) (enacted)); 141 Cong. Rec. H4122-01, 1995 WL 143978 (1995).  It also directed the Sentencing Commission to prepare a report and analysis of sex offenses against children and child pornography for submission to Congress.  Sex Crimes Against Children Prevention Act of

1995, Pub. L. No. 104-71, H.R. 1240, 104th Cong., 109 Stat. 774, 775 (1995) (enacted). The Sentencing Commission carried out the directive by increasing the base offense levels for producing, trafficking, and possessing child pornography by two levels and adding a two-level enhancement for use of a computer.  *See* Notice of Submission to Congress of Amendments to the Sentencing Guidelines, 61 Fed. Reg. 20,306, 20,307-08, 1996 WL 223875 (F.R.) (May 6, 1996) (to be codified at U.S.S.G. §§ 2G2.1, 2G2.2, 2G2.4).  The Commission also added other amendments clarifying and broadening the definition of the "pattern of activity involving sexual abuse of a minor" enhancement to apply to conduct unrelated to the offense of conviction in order to "increase the sentences for the most dangerous offenders."  Sex Offenses Against Children Report at i; *see* U.S.S.G. App C, Vol. I, amend. 537.

In its report to Congress, noting that "[i]t appears that a significant portion of child pornography offenders have a criminal history that involves the sexual abuse and exploitation of children," the Sentencing Commission recommended that Congress increase statutory maximum sentences for production of child pornography and double the statutory maximum for offenders with prior convictions for sex abuse crimes.  Sex Offenses Against Children Report at ii.  The amendments and recommendations were intended to "ensure lengthy incarceration of repeat sex offenders who show the greatest risk of victimizing children."  *Id*. at i.  Noting that it was constrained by the 1991 Congressional directive that cases involving receipt of pornography should be sentenced under the trafficking guideline rather than the possession guideline, the Commission contemplated consolidating the trafficking/receipt and possession guidelines in a future amendment in

order to reduce unwarranted disparity between convictions for receipt and those for possession.[4]  *Id.* at 11, 41.

In compiling and analyzing its statistics, the Sentencing Commission noted that federal prosecutions for child sex offenses represented a small percentage of the total number of such cases nationwide, because the vast majority of sex offenses were prosecuted in state court.  *Id.* at i.  The Commission stated that "[p]enalties for sex offenses against children have been increased in recent years and are quite severe," but noted that amendment may "be appropriate to increase sentences for the most dangerous offenders."  Sex Offenses Against Children Report, Executive Summary at 1.

Congress responded to the Commission's report with new legislation increasing penalties for child pornography, exploitation and abuse.  Protection of Children From Sexual Predators Act of 1998, Pub. L. No. 105-314, 1998 H.R. 3494, 105th Cong., 112 Stat. 2974 (1995) (enacted).  Congress directed the Commission to increase penalties and add enhancements and to clarify that distribution included distribution for nonpecuniary gain. *Id.,* 112 Stat. at 2980-82.  The Sentencing Commission afforded expansive coverage to the meaning of distribution in U.S.S.G. § 2G2.2(b)(3)(A)-(F) and added several enhancements depending on the purpose and audience for the distribution.  U.S.S.G. App. C, Vol. II, amend. 592 (Nov. 1, 2000).

Congressional enactment of the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 (the "PROTECT Act") established a five-year mandatory minimum sentence for trafficking/receipt offenses and made several direct

---

[4]The Commission contemplated that the consolidated guideline would have the higher base offense level of the pre-consolidation guideline, but a two-level downward adjustment would apply if the case involved the receipt or possession of fewer than 10 items with no intended distribution.  Sex Offenses Against Children Report at 41.

amendments to the Guidelines.[5]  *See* PROTECT Act, Pub. L. No. 108-21, 2003 S. 151, 108th Cong., 117 Stat. 650, 653 (2003) (enacted); U.S.S.G. App. C, Vol. II, amend. 649 (April 30, 2003).  Implementing directives of the Act, the Sentencing Commission collapsed the guideline dealing with possession (formerly U.S.S.G. § 2G2.4) into the guideline dealing with trafficking of pornography (U.S.S.G. § 2G2.2).  *See* U.S.S.G. App. C, Supp. Vol., amend. 664 (Nov. 1, 2004).  To conform to the new mandatory minimum sentences and increased statutory maxima, the Sentencing Commission also raised base offense levels for trafficking/receipt offenses from 18 to 22 and base offense levels for possession from 15 to 18.  *Id.*  The Commission also added several specific-offense-characteristic enhancements and significant enhancements for the number of images possessed, received or distributed.  *See id.*  The Commission noted that enhancements for use of a computer and number of images would be applicable in every case, thus ensuring that the Guideline sentences would approximate the statutory mandatory minimum sentences.  *Id.*

The clear focus of this legislation and concomitant Guidelines revision is on the patent evils of child pornography and the new dimension that computer technology adds to those evils.  *See* Child Pornography Prevention Act of 1996, Omnibus Consolidated Appropriations Act, Pub. L. No. 104-208, § 121, 1996 H.R. 3610, 104th Cong., 110 Stat. 3009, 3009-26 (1996); *see also* notes following 18 U.S.C.A. § 2251.  In particular, amendments to the Guidelines reflect Congressional concerns that "pedophiles, including those who use the Internet, are using child pornographic and obscene material to

---

[5]The PROTECT Act also increased the statutory maximum term of imprisonment t from 15 to 20 years for trafficking/receipt offenses under 18 U.S.C. §§ 2252(a)(1)-(3) and 18 U.S.C. § 2252A(a)(1) - (4) and (6) and increased the statutory maximum for possession offenses under 18 U.S.C. § 2252(a)(4) and 18 U.S.C. § 2252A(a)(5) from five to ten years.  PROTECT Act, Pub. L. No. 108-21, 2003 S. 151, 108th Cong., 117 Stat. 650, 653 (2003) (enacted)

desensitize children to sexual activity, to convince children that sexual activity involving children is normal, and to entice children to engage in sexual activity."  U.S.S.G. App. C., Vol. 2, amend. 592 (Nov. 1, 2000).  The primary victims of the crime of possession of pornography are the exploited children.  *See United States v. Rugh,* 968 F.2d 750, 756 (8th Cir. 1992).

The fairness of the Guidelines is heavily dependent on fair and reasonably consistent charging policies in the Department of Justice.  Fifteen-Year Assessment at 23-24.  To that end, prosecutors have been directed to "charge and pursue the most serious, readily provable offense or offenses that are supported by the facts of the case, except in limited, enumerated circumstances."  *Id.* at 24.  Empirical evidence shows that charging and plea bargaining practices continue to introduce significant disparities into the sentencing regime. Fifteen-Year Assessment, Executive Summary at xii.  The Commission has acknowledged that often "the value of a mandatory minimum sentence lies not in its imposition, but in its value as a bargaining chip to be given away in return for the resource-saving plea from the defendant to a more leniently sanctioned charge."  Mand. Min. Rep't at 14-15.  The Commission also acknowledges that "[s]ince the power to determine the charge of conviction rests exclusively with the prosecution for the 85 percent of the cases that do not proceed to trial, mandatory minimums transfer sentencing power from the court to the prosecution" and "to the extent that prosecutorial discretion is exercised with preference to some and not to others," disparity is reintroduced into the system.  Mand. Min. Rep't at 1; *see also* Fifteen-Year Assessment at 89 (noting that research over the past fifteen years has "consistently found that mandatory penalty statutes are used inconsistently in cases in which they appear to apply").

15

### III.    ANALYSIS

#### A.    Guideline Calculation

The court first calculates the defendant's sentence under the advisory Guidelines. The court adopts the findings in the PSR and overrules the defendant's objections. The court finds that Gellatly's base offense level under the Guidelines is 22. See U.S.S.G. § 2G2.2(a)(1). The court further finds the following adjustments are applicable: a two-level increase under U.S.S.G. § 2G2.2(b)(2) for possession of material containing a prepubescent minor, a four-level increase under U.S.S.G. § 2G2.2(b)(4) for material that portrays sadistic or masochistic images, a two-level increase under U.S.S.G. § 2G2.2(b)(6) for use of a computer, and a five-level increase under U.S.S.G. § 2G2.2(b)(7) for possession of more than 600 images. Defendant is also entitled to a two-level decrease in his offense level because there is no evidence that he distributed or intended to distribute the materials. The application of these adjustments results in an adjusted offense level of 33. The court finds an adjustment for acceptance of responsibility is warranted and the government moves for a three-level adjustment. The court thus finds the defendant's total offense level under the Guidelines is 30. At criminal history category I, the defendant's advisory Guidelines term of imprisonment is 97 to 121 months.

The defendant's motion for a downward departure is denied. The court's determination of the Guideline sentence in a child pornography case does not generally include consideration of departure issues. The PROTECT Act limits the court's authority to downwardly depart. 18 U.S.C. § 3553(b)(2). The PROTECT Act amended 18 U.S.C. § 3553(b) to restrict the authority of the district courts to depart from the Guidelines in sexual offense and child pornography cases. *Id.*

16

### B.   Section 3553 Factors

In considering the nature and circumstances of the offense, the court first finds possession of child pornography is a serious offense.  It is one of a class of crimes that involve commercial sex acts, sexual exploitation of minors, and obscenity covered under part G of the Guidelines.  Sexual exploitation offenses include the production of child pornography and the exploitation of children for the purposes of prostitution or pornography production, as well as trafficking in pornography.  Criminalizing the possession of child pornography is a necessary complement to laws banning distribution of such items, and is intended to destroy the market for exploitation of children.  Possession of pornography is the least serious of the crimes on the continuum of conduct–from possession to distribution to production to predatory abuse–that exploit children.  One who possesses child pornography is considerably less culpable than one who produces or distributes the exploitative materials and a possessor is a marginal player in the overall child exploitation scheme.  Notably, with respect to the circumstances of the crime, the government acknowledges that there is no evidence that Gellatly intended to distribute the materials to others.

As noted, Gellatly was originally charged with a violation of 18 U.S.C. § 2252(a)(4)(B), possession of child pornography, as well as 2252A(a)(2), receipt of child pornography.  Under the plea agreement, the government moved to dismiss the Section 2252(a)(4)(B) charge, which carried no mandatory minimum sentence.  In the context of most Internet child pornography crimes, there is no principled distinction between receipt and possession.  In order to obtain child pornography via the Internet, it is generally necessary to receive the pornography in order to possess it.  The statutes criminalizing the

possession of child pornography, as amended over time and as interpreted by the Sentencing Commission in formulating Guidelines, are clearly aimed at the widespread and profit-driven dissemination of child pornography that the Internet facilitates and fosters. Without reference to rare, unusual, or far-fetched factual situations, there does not seem to be any real difference between receiving and possessing child pornography. *Cf. United States v. Watzman,* 486 F.3d 1004, 1009 (7th Cir. 2007) (illustrating the unusual situation wherein a person who receives child pornography by accident—for example, if he sought adult pornography but was sent child pornography instead—is not guilty of knowingly receiving it, though he is guilty of possessing it if he retains it). Because the facts of this case do not involve any such unusual situation, the court knows of no nonarbitrary rationale for the government's choice to pursue one statutory provision over the other. In Internet child pornography crimes that do not involve an element of distribution or dissemination, a "receipt" crime is essentially the same as a "possession" crime. The essentially standardless grant of unbridled discretion to prosecutors in these cases is troubling and harbors a potential for arbitrariness and abuse. Quite simply, the court, and not the prosecutor, is obliged to consider the factors set out in 28 U.S.C. § 3553(a) to determine a fair sentence. Although Section 3553(a) does not instruct the court to adhere to prosecutorial charging decisions in its analysis, the court is constrained by the applicability of the mandatory minimum.

The court has also considered the defendant's history and characteristics. The record shows that Thomas Gellatly is a sixty-two-year-old man with no history of criminal activity, drug or alcohol abuse or mental health pathology. He had an unremarkable childhood, was divorced after 21 years of marriage, and has two grown daughters. He

graduated from Hastings College in Hastings, Nebraska, with a Bachelor of Arts degree in history, drama and education.  He was employed for many years as a teacher in public and parochial schools and as a teacher and director at a children's theater.  He resigned from his job as a teacher at a middle school as a result of his arrest on this charge.  He has a well-documented history of physical problems and has had serious mental health issues since his arrest.  Importantly, there is no evidence that Gellatly was ever a pedophile, sexual predator or child abuser or that he will be one in the future.

In addition, the court has consulted and taken into account, as advisory, the kinds of sentence available and the applicable category of offenses and category of defendant as set forth in the United States Sentencing Guidelines and policy statements.  The court has used the Guidelines calculation as its initial starting point.  However, in view of the fact that the child pornography Guidelines are statutorily-driven, as opposed to empirically grounded, the court finds that the Guidelines ranges of imprisonment are not a reliable appraisal of a fair sentence in this case.  Because the child pornography Guidelines do not reflect the Sentencing Commission's unique institutional strengths, the court affords them less deference than it would to empirically-grounded guidelines.

By virtue of the government's charging and plea decisions, Gellatly is already subject to a mandatory minimum sentence of five years.  In this case, the application of numerous Guidelines enhancements inordinately increases Gellatly's Guidelines range of imprisonment.  Gellatly's conviction for receipt as opposed to mere possession first increases his base offense level from 18 to 22.  The enhancements raise his offense level from 22 to 35, and raise the low end of his sentencing range from 41 months to 97 months.  The application of the solitary guideline adjustment that decreases his offense level by two

levels because he did not distribute or intend to distribute the materials does not adequately compensate for these increases.

Also, Gellatly is subject to enhancements for use of a computer and number and type of images that apply in virtually every case. Accordingly, those enhancements lack value as a reliable proxy for culpability or as a means to gauge the relative culpability of between offenders. The Internet has become the typical means of obtaining child pornography, and Internet child pornography cases are essentially the only kind of child pornography crime prosecuted in federal court. Enhancements for images that contain prepubescent children is also typical of these crimes. Because of the increased ability to easily and inexpensively capture and store images with computers, reliance on the number of images to provide the distinction between a large-scale and a small-scale child pornography purveyor is no longer the reliable indicator that Congress and the Sentencing Commission envisioned when promulgating the quantity-driven enhancement. The connection between the number of images and a defendant's culpability is further attenuated when, as here, the defendant is not disseminating the images, using them to entice a child, or showing them to a child. Further, because of the unfortunate ease with which a large number of images can be accessed and obtained, an enhancement of the magnitude of five levels is out of line with whatever connection there may be between a defendant's culpability and the number of images he possesses. Moreover, a four-level enhancement for portrayal of sadistic or masochistic conduct or images of violence will apply whether or not a defendant specifically intends to possess such material and is thus another inadequate measure of culpability. The application of a four-level enhancement

20

for portrayal of sadistic conduct is especially out of proportion in this case, where the evidence shows only one image that fits the broad definition of such conduct.

The court has also considered the need to avoid sentencing disparities. The history of legislative enactments in this area reflects Congressional concern with the use of computers to lure or entice children into sex acts. Possession of child pornography was criminalized in part because of concerns that the Internet facilitated access to and enticement of minors for sexual exploitation, as well as concerns that pedophiles use the materials to desensitize and entice victims. Receipt, which generally goes hand in hand with distribution, was categorized with trafficking offenses instead of possession offenses because of concerns about the ability of computer technology to add to the patent evils of child pornography.

In light of those concerns, a harsher punishment for receipt than for possession would make sense if aimed more at the distribution prong than the receipt prong. By the government's own admission, neither distribution nor intent to distribute apply to Gellatly. Enhancements of increasing severity for quantity and for recidivism are aimed at the most dangerous of child pornography offenders. Gellatly dos not fall within that class, especially since the evidence shows that he has been in extended contact with children for many years and has never acted on his impulses. On the culpability spectrum of child exploitation offenses, Gellatly is an example of a defendant who deserves a sentence closer to the low end of the statutory range than to the middle or high end.

Gellatly's plea to the section 2252A charge requires the court to sentence him to a minimum of five years. If not constrained by the government's charging decision, the court

21

would be inclined to sentence this defendant to a shorter term of imprisonment that would be more in line with the sentences imposes on similar defendants convicted of possession.

A shorter sentence would more closely approximate the sentencing range that was in effect before the Sentencing Commission merged the child pornography possession guideline into the trafficking guideline, and before Congress equated "receipt and/or distribution" offenses with trafficking offenses rather than possessory offenses, thus maintaining the important qualitative distinctions between "mere possession" and "receipt and distribution" of child pornography. The far greater culpability of an actual predator or abuser should be reflected in a sentence that greatly exceeds the punishment for the exploitative crimes that do not involve acts of abuse by a defendant.

The court finds this sentence will provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant. Although the defendant's prior extensive contact with children is somewhat unsettling, whatever unease the court has with that situation is properly remedied by a strict and lengthy term of supervised release and not by an extended period of incarceration.

## IV.    CONCLUSION

Accordingly, the court finds a sentence of 60 months (five years) will satisfy the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. The court finds that a sentence of incarceration shorter than the sentence recommended under the Guidelines is still a

lengthy sentence in view of the defendant's age.  The mere fact of Gellatly's prosecution and conviction will deter others from engaging in this sort of conduct.  The deterrence value of any longer sentence would be marginal.  Given that the benefit to society of a longer period of incarceration would be negligible, any benefit is outweighed by the potential harm a longer sentence would have on Gellatly's physical and mental health.  The need to protect society from further crimes of the defendant is accounted for in the court's imposition of a life term of supervised release and by several stringent special conditions of supervision, including restrictions on computer use and contact with children.

A Judgment and Commitment and Statement of Reasons in accordance with this Sentencing Memorandum will issue this date.

DATED this 5th day of January, 2009.

BY THE COURT:


s/ Joseph F. Bataillon
Chief District Judge